[No. 43827. En Banc. December 16, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID BARKLIND, *Petitioner*.

David A. Leen of Legal Services Center (Seattle) and Jim Walsh, for petitioner.

David F. Thiele, Prosecuting Attorney, for respondent.

BRACHTENBACH, J.—Defendant pleaded guilty to a charge of second-degree burglary. At the preliminary hearing he was found to be indigent and an attorney was appointed at public expense to represent him. At sentencing the court deferred sentence and granted probation as a condition of which defendant was ordered to pay the county, under terms hereafter described, $150 as reimbursement for a portion of the expense of his court-appointed attorney. Defendant challenges the constitutionality of that portion of the order deferring sentence and granting probation upon the condition that he reimburse the county for costs incurred in providing him with counsel. The Court of Appeals affirmed. *State v. Barklind,* 12 Wn. App. 818, 532 P.2d 633 (1975). We affirm.

The trial court order provided for payments of $25 per month. The order further provided that

Defendant's duty to make the payments pursuant to item 1 above shall exist only so long as defendant has the present financial ability to pay without causing undue hardship to himself or his dependents. Revocation of this probation for nonpayment shall only occur if defendant wilfully failed to make the payments having the financial ability to do so or wilfully failed to make a good faith reasonable effort to acquire means to make the payment. Defendant may petition the court to adjust the amount of any installment payments or the total amount due to fit his changing financial situation.

Defendant contends that this repayment order (1) impermissibly burdens his right to counsel; (2) denies equal protection; (3) may result in imprisonment for debt in violation of our state constitution; and (4) involves involuntary servitude in violation of the thirteenth amendment to the United States Constitution.

We begin with the principle that an indigent criminal defendant is entitled to the assistance of counsel without cost. Further, such defendant cannot be influenced to surrender that constitutional right by the imposition of a penalty on the exercise thereof. *State ex rel. Brundage v. Eide,* 83 Wn.2d 676, 521 P.2d 706 (1974). It is defendant's

contention that *Eide* supports his position that the repayment order burdens his constitutional right to counsel.

In *State ex rel. Brundage v. Eide, supra,* at the time of appointment of counsel, the defendant was ordered to pay attorney's fees of $35 per hour if, within 6 months thereafter, he found employment enabling him to do so. Obviously that order would give an indigent defendant pause and would chill his exercise of his right to counsel. The effect of the court's order in later imposing liability upon the defendant for the fee would be to issue a "blank check" to counsel. We correctly held that such an order did not meet constitutional standards.

In the present case, however, no such impediment attached to defendant's right to counsel. The appointment of counsel at public expense to represent defendant was unconditional. It was only when the trial court exercised its discretion of whether to commit the defendant to the penitentiary for not more than 15 years or to grant probation that the repayment issue arose. It is this fact that distinguishes the present situation from that in *State ex rel. Brundage v. Eide, supra.* The court in *Eide* was not presented nor did it consider the question of whether the court has inherent power to exercise discretion to consider appropriate factors and fashion conditions of probation which meet constitutional criteria. *State v. Hess,* 86 Wn.2d 51, 54, 541 P.2d 1222 (1975). We fail to perceive the constitutional deficiency in the system which allows the trial court discretion to grant probation and in effect, as a condition, tell the defendant that he should recognize some obligation to society for the crime which he voluntarily committed.

It is argued that a reimbursement requirement may adversely affect rehabilitation by embittering the probationer who views the requirement as extortion or threatened imprisonment for debt. Kamisar & Choper, *The Right to Counsel in Minnesota: Some Field Findings and Legal-Policy Observations,* 48 Minn. L. Rev. 1, 26 n.114 (1963). If that is a fact, and we do not know if it is, it is a behavioral problem which reflects more upon the attitude

of the defendant than upon a society against which a crime has been committed and which has guaranteed that defendant free counsel.

The question of the constitutionality of repayment conditions on probation was recently addressed in *Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974). *Fuller* held constitutional an Oregon recoupment statute because it contained several safeguards against oppressive application. In comparing these safeguards to the trial court's order, we find that the court fashioned its order on every point mentioned in *Fuller v. Oregon, supra* at 44-47.

First, the requirement of repayment must not be mandatory. Under the terms of the order this test is met. Second, repayment is only to be imposed upon convicted defendants. In the present case, defendant pleaded guilty to the crime charged. Third, the court may not order a convicted defendant to pay unless he "is or *will* be able to pay." Such is an express provision of the court's order. Fourth, the court must take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose. This requirement is met. The order provides that the defendant's duty to make payments shall exist only so long as the defendant has the present financial ability to pay without causing undue hardships to himself or his dependents. Fifth, no requirement to repay may be imposed if it appears that there is no likelihood that defendant's indigency will end. While the record is somewhat deficient in this regard, it does contain an affidavit by the defendant that in the summer he is self-employed as a "plower" at $16 per hour. This is sufficient to indicate a likelihood that his indigency will end during the probation period. Sixth, a convicted person under obligation to repay may petition the court for remission of the payment of costs or of any unpaid portion thereof. The trial court order specifically allows the defendant to petition the court to adjust the amount of any installment or the total amount due to fit his changing financial situation. Finally, no convicted person can be held

in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court or to a failure to make a good faith effort to make the payment. Under the terms of the order, this requirement is squarely complied with.

In the final analysis, we do not find this order to impermissibly burden defendant's constitutional right to counsel. The trial court met all the requirements of the constitution and adhered to the principles set forth in *Fuller*. The issue is best summarized by Mr. Justice Douglas in his concurring opinion in *Fuller*, wherein he stated:

> Repayment cannot be required until a defendant is able to pay the costs, and probation cannot be revoked for nonpayment unless there is a specific finding that payment would not work hardship on a defendant or his family. Under these circumstances, the "chill" on the exercise of the right to counsel is no greater than that imposed on a nonindigent defendant without great sums of money.

*Fuller v. Oregon, supra* at 56.

We note that the legislature has enacted a recoupment statute identical to the Oregon statute upheld in *Fuller*. Laws of 1975, 2d Ex. Sess., ch. 96. At least 29 other jurisdictions have some form of a recoupment statute. *See, e.g.,* Cal. Pen. Code Ann. § 987.8 as amended ch. 1199 (West 1974); Idaho Code Ann. § 19-859 (Supp. 1975); Minn. Stat. Ann. § 611.35 (Supp. 1976); Nev. Rev. Stat. § 176.091 (1975); N. J. Stat. Ann. tit. 2A § 158A-16, 17 (1971); Vermont Stat. Ann. tit. 13, § 5255 (1974); Wis. Stat. Ann. § 256.66 (1971). Defendant concedes that overturning this order would make the new statute unconstitutional. To do so we would have to impose a higher constitutional standard than mandated by the *Fuller* decision and we decline to do so.

Defendant's contention that the repayment provision violates the equal protection clause is based upon *James v. Strange*, 407 U.S. 128, 32 L. Ed. 2d 600, 92 S. Ct. 2027 (1972), which invalidated a Kansas recoupment statute. The Kansas statute, however, was materially different

from the statute approved in *Fuller* and the kind of order we approve in this case. It provided that the total amount expended was due within 60 days after receipt by the defendant of a notice of the amount paid. If not paid, it became an interest-bearing judgment and a lien on real estate. It authorized execution, garnishment, and other proceedings in aid thereof. Most importantly it denied the defendant all the exemptions available to other judgment debtors except the homestead exemption. The court found that the elimination of the exemptions normally available to judgment debtors "embodie[d] elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law." *James v. Strange, supra* at 142.

■ The trial court's order under consideration here suffers from no such infirmity. In this case there is a much less onerous burden. The court did not create an obligation equivalent to a civil judgment. Its order is tempered entirely toward the circumstances of the defendant. There was no effort to destroy the defendant's possession of minimal resources. Under the order his right to an avoidance to undue hardship may well be more protective than the arbitrarily set minimum assets preserved by the exemption statutes. The assets protected by the exemption statutes really have no relation to the hardship caused by allowing all assets above their standards to be seized. Here the defendant has the ultimate protective order that any payment cannot cause undue hardship to him or his dependents. We find no denial of equal protection.

Defendant next argues that the order of repayment renders him liable for imprisonment for debt, which is proscribed by Const. art. 1, § 17. It is elementary that personal liberty transcends the obligation to pay a monetary sum in most circumstances. *In re Milecke*, 52 Wash. 312, 100 P. 743 (1909). Here, however, the defendant will never be jailed because he fails to pay $150 to Island County. He only faces possible confinement if he contemptuously violates the court's order of probation—an order which

the trial court could have avoided by sending the defendant to the penitentiary.

> We believe the constitutional prohibition against imprisonment for debt relates to run-of-the-mill debtor-creditor relationships arising, to some extent, out of tort claims, but principally, out of matters basically contractual in nature. In such cases, the judgment of the court is merely a declaration of an amount owing and is not an order to pay.

*Decker v. Decker*, 52 Wn.2d 456, 458, 326 P.2d 332 (1958). The order of probation does not create a debt within the meaning of the constitutional prohibition. A debt is created only in the sense that the order required defendant to repay society for a part of what it lost as a result of his commission of a crime. Moreover, the trial court's order is worded carefully and explicitly to avoid creating an absolute debt for which imprisonment is a possible consequence of nonpayment. Only if defendant willfully fails to make payments having the financial ability to do so or willfully fails to make a good faith reasonable effort to acquire means to make the payment does he face possible confinement. Such an order does not violate Const. art. 1, § 17.

Finally, defendant contends that any use of imprisonment to enforce the repayment order would constitute involuntary servitude contrary to the thirteenth amendment to the United States Constitution. Defendant cites two cases to support his contention. In *Wright v. Matthews*, 209 Va. 246, 163 S.E.2d 158 (1968), over $1,000 in costs were assessed against an indigent defendant following his conviction upon nine indictments. The court remanded him to jail to serve consecutive sentences and to serve such additional time as may be required to pay the costs, unless paid sooner. A statute gave defendant a credit of 75 cents per day of work and 25 cents for each nonworking day. In order to gain his release, defendant would be required to remain in confinement for almost 3 years beyond the time he was sentenced in order to pay the costs. The state's sole ground for detaining defendant at the time the action

was commenced was his failure to pay these costs. The court held that such costs were not part of the punishment and therefore defendant's confinement constituted involuntary servitude in contravention of the Thirteenth Amendment. A similar result was reached in *Anderson v. Ellington,* 300 F. Supp. 789 (M.D. Tenn. 1969).

These cases are distinguishable from the present situation. In both of the cases relied upon by defendant, the inmates were imprisoned solely because of their inability to pay costs upon completion of their sentences due to their indigent status. Such is not possible in the present case. Defendant, if ever imprisoned, will be imprisoned only for a willful and contemptuous violation of a condition of probation. This distinction is significant and was recognized in *State v. Gerard,* 57 Wis. 2d 611, 205 N.W.2d 374, *appeal dismissed,* 414 U.S. 804, 38 L. Ed. 2d 40, 94 S. Ct. 148 (1973). In *Gerard* the defendant's probation was revoked for failure to comply with the conditions of probation. One of defendant's contentions was that imprisonment resulting from his failure to pay the court costs upon which probation had been conditioned violated the Thirteenth Amendment. Defendant made no claim that he could not meet the terms and conditions of probation, nor that he did not have the ability to make some payments. The court found that

> The defendant's right under the thirteenth amendment was not violated. Probation was revoked for failure to comply with its terms and not for failure to pay a debt. Revocation of probation is a matter of judicial discretion and the court had a substantial basis in fact to support its determination—that is, the conditions of probation had been violated. . . .
>
> . . . Violating one's probation does not constitute involuntary servitude. Defendant is simply now serving out a sentence that was previously imposed and stayed upon conditions which he violated.

*State v. Gerard, supra* at 624.

We find the rationale of *State v. Gerard, supra,* persuasive.

The order from which the appeal is taken is affirmed.

STAFFORD, C.J., and HAMILTON, WRIGHT, and HOROWITZ, JJ., concur.

DOLLIVER, J. (dissenting)—In 1974, this court held in *State ex rel. Brundage v. Eide,* 83 Wn.2d 676, 521 P.2d 706 (1974), that an indigent defendant's Sixth Amendment right to counsel was unconstitutionally impaired by a district court order requiring defendant to pay attorney's fees. The order was issued at the time counsel was appointed and required that the fees be repaid if, within 6 months, the defendant found employment enabling him to do so. In the present case, the majority holds that if the order of repayment is imposed at the time of granting probation, rather than at the time the right of counsel attaches, no constitutional impairment exists. This is a distinction with which I am unable to concur.

The majority, following *Fuller v. Oregon,* 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974), sets forth an elaborate series of tests by which the repayment order made at the time of probation may become valid. This simply misses the point. The question is not the nicety of the rules which require repayment or whether the defendant can at some future date pay for legal services. Rather, it is whether at the time an indigent defendant requests counsel there is the knowledge that at some time during that judicial process reimbursement may be required as a condition to the granting of a benefit by the court. As stated by the California Supreme Court in *In re Allen,* 71 Cal. 2d 388, 455 P.2d 143, 78 Cal. Rptr. 207 (1969), and quoted with approval in *State ex rel. Brundage v. Eide, supra* at 681, "This knowledge is quite likely to deter or discourage many defendants from accepting the offer of counsel despite the gravity of the need for such representation . . ." If it becomes the law of this state that at some juncture, whether as in *Eide,* or as in this case, or at some other point during the proceeding, a reimbursement may be required of the defendant, then the constitutional right of an indigent to counsel and our rule approved in *Eide* become stripped of their meaning.

In interpreting a state constitution, a state court is not bound by a federal court's interpretation of a comparable constitutional provision. *Herr v. Schwager*, 145 Wash. 101, 258 P. 1039 (1927); *State v. Moore*, 79 Wn.2d 51, 66, 483 P.2d 630 (1971) (Rosellini, J., dissenting opinion). We need not bind ourselves to the interpretation given to the Sixth Amendment by the United States Supreme Court (*e.g., Fuller v. Oregon, supra*), when we interpret the similar language of Const. art. 1, § 22. We need not adopt the lower standard of *Fuller v. Oregon, supra,* as the majority urges, but instead should continue to assert the standard set forth in *State v. Eide, supra.*

The position of the majority offends precisely the constitutional right we sought to defend 2 years ago. Constitutional rights deserve better treatment. I dissent.

ROSELLINI, HUNTER, and UTTER, JJ., concur with DOLLIVER, J.

Petition for rehearing denied January 11, 1977.