67 P.3d 530 (2003)
116 Wash.App. 697
STATE of Washington, Respondent,
v.
John B. WOODWARD, Appellant.
No. 21135-5-III.
Court of Appeals of Washington, Division 3, Panel Eight.
May 1, 2003.
*531 Donald G. Miller, Spokane, WA, for Appellant.
Eric C. Biggar, Deputy Prosecuting Attorney, Douglas County Prosecutor's Office, Waterville, WA, for Respondent.
BROWN, C.J.
John Woodward failed to pay his legal financial obligations arising from a 1993 conviction. In 2002, the State petitioned to confine Mr. Woodward for his failure to make scheduled payments and also for a failure to appear at a review hearing. The Douglas County Superior Court entered an order of noncompliance with respect to both violations and imposed a 120-day jail sentence. Mr. Woodward appeals, contending he was *532 not willful because of his indigent status. We affirm.

FACTS
In 1993, Mr. Woodward pleaded guilty to a burglary and one count of taking a motor vehicle without the owner's permission. Mr. Woodward's plea statement indicated the State would request he pay restitution and other financial obligations. The superior court found Mr. Woodward guilty and imposed 36 months of confinement together with legal financial obligations of $2,760, including $2,550 for restitution.
In November 1999, the State petitioned to confine Mr. Woodward for failure to make required payments on his legal financial obligations. Mr. Woodward was then $665 in arrears on a total obligation of $3,695.05. In January 2000, the superior court entered an order of noncompliance and ordered Mr. Woodward to spend 20 days in jail.
In June 2000, the State petitioned again to confine Mr. Woodward for failure to make required payments and also for failure to appear at a review hearing. At that time, Mr. Woodward was $1,055 in arrears and his total obligation had grown to $3,978.08. In October 2000, the trial court entered another order of noncompliance and imposed 23 days of confinement.
In January 2001, the State petitioned a third time to confine Mr. Woodward for failure to make required payments and for another failure to appear at a review hearing. By that time, Mr. Woodward was $195 in arrears on a total obligation of $4,315.57. Mr. Woodward failed to appear at a June 4, 2001 hearing and a bench warrant issued. The State apprehended Mr. Woodward in early July and he secured his release pending further proceedings on July 16, 2001.
Mr. Woodward failed to appear at the scheduled August 6, 2001 hearing and a warrant issued. He did not also appear at a subsequently scheduled hearing on August 13, 2001. On August 29, 2001, Mr. Woodward appeared before the court and admitted his violations. The court then entered a third order of noncompliance and imposed 120 days of confinement, and further warned Mr. Woodward it would impose 120 days for future violations. The trial court also denied Mr. Woodward's request for work release.
In November 2001, the Douglas County Financial Collections Officer (FCO) took over collection of Mr. Woodward's obligations from the Department of Corrections. Mr. Woodward then wrote a letter to the FCO indicating his willingness to resume payments on his obligations. Mr. Woodward then signed a stipulated order requiring him to pay $25 per month commencing January 15, 2002. Mr. Woodward acknowledged in a letter his promise to make the $25 payments.
Mr. Woodward did not pay anything. And he did not appear at a March 4, 2002 review hearing. On March 25, 2002, the State filed yet another petition to confine Mr. Woodward. Mr. Woodward was $75 in arrears on a total obligation of $4,172.84. Mr. Woodward initially denied the alleged violations.
At a May 20, 2002 hearing, Mr. Woodward appeared with counsel and admitted the March 4 failure to appear, but argued also his failure to pay was not a willful violation. The court then took testimony on the nonpayment.
The FCO testified Mr. Woodward's letter regarding resumption of payments resulted in the stipulated order setting $25 monthly payments. She further testified Mr. Woodward proposed $25 as the proper amount and promised he would pay it. And Mr. Woodward confirmed in a letter his intent to start payments in January. But he had made no payments at all and did not contact the FCO regarding the matter.
Mr. Woodward admitted signing the stipulated order. He said he was receiving $340 a month in government assistance. His monthly expenses totaled approximately $250 or more. Mr. Woodward claimed he could not work because of emphysema.
On cross-examination, Mr. Woodward admitted making one or more $40 payments in 2001 and a $500 lump payment derived from forfeited bail posted by another. Mr. Woodward said his agreement to pay $25 per month was dependent on a social security settlement he not yet received and that he *533 expected it might take another two or three years to arrive.
Mr. Woodward admitted writing to the FCO that he would pay from his government assistance (GAU), but testified, "I don't have enough money to give youto even live on GAU. It's probably moreI receive less than probably your car payment." Report of Proceedings (RP) at 30. Mr. Woodward said he intended to meet his obligations. Mr. Woodward conceded he did not mention the social security settlement in his letters to the FCO. And he admitted not contacting the FCO to inform her of his inability to pay.
The trial court asked Mr. Woodward how long he had been on government assistance. Mr. Woodward answered, "[p]robably about a year, Judge, or so, a little better than that." RP at 33. The trial court asked him if he was working in August 2001. Mr. Woodward answered, "I don't think I was." RP at 34. When informed by the trial court he had asked for work release in August 2001, Mr. Woodward replied, "I don't believe it was me. I think there's another John Woodward in the jail, maybe it was him." RP at 34. A court minute entry reflects his work release request.
The trial court noted a 60-day confinement for failure to appear was a given, and Mr. Woodward agreed. The trial court then reasoned the failure to pay was willful observing Mr. Woodward "can probably afford to pay something a month, even if it's five bucks a month," and that he was not "even making an effort to pay five dollars a month." RP at 36-37.
The court then imposed a total of 120 days confinement, 60 days on each violation. Mr. Woodward appealed.

ANALYSIS
The issue is whether the superior court erred in incarcerating Mr. Woodward for 60 days for failing to pay his legal financial obligations. Mr. Woodward conceded he was already subject to 60 days for failing to appear for his review hearing.
In a noncompliance proceeding, the State bears the burden of proving a defendant's noncompliance with sentencing conditions, such as payment of legal financial obligations. State v. Peterson, 69 Wash.App. 143, 146, 847 P.2d 538 (1993); RCW 9.94A.634(3)(c).[1] If the State proves the defendant's failure to comply, the burden shifts to the defendant to show cause why he or she should not be punished. Id. "If the court finds that the violation was not willful, the court may modify its previous order regarding payment of legal financial obligations and regarding community restitution obligations." RCW 9.94A.634(3)(d); see also Peterson, 69 Wash.App. at 146, 847 P.2d 538 (discussing former statute).
The court may order a noncomplying offender to be confined for not more than 60 days for each violation. RCW 9.94A.634(3)(c). The trial court may impose consecutive terms of confinement for each violation relevant to the proceeding so long as the total period of confinement does not exceed the maximum term of the underlying conviction. See State v. McDougal, 120 Wash.2d 334, 352, 841 P.2d 1232 (1992) (affirming 10 consecutive 45-day terms of confinement where maximum term for the underlying offense was 5 years).
The 60 days for failure to appear is not at issue; Mr. Woodward admitted the violation and has not contended the violation was not willful. But he contends his failure to pay was not willful, and, therefore, the trial court erred in imposing an additional 60 days for that violation.
Whether the offender established the violation was not willful is subject to a clearly erroneous standard. See State v. Campbell, 84 Wash.App. 596, 601-02, 929 P.2d 1175 (1997) (reasoning the trial court's determination on the defendant's resources and ability to pay is essentially factual and thus reviewable under the clearly erroneous standard). The trial court's chosen remedy for the violation, willful or not, is essentially *534 a matter of discretion guided by RCW 9.94A.634. See generally Peterson, 69 Wash.App. at 148, 847 P.2d 538 (noting the trial court's sentencing decision cannot exceed its statutory authority).
In dicta, this court reasoned that where willful noncompliance is at issue, the State must show the defendant was able to comply with the sentencing provision. Peterson, 69 Wash.App. at 146-47, 847 P.2d 538. This court relied on a Supreme Court opinion holding the trial court must assess the defendant's ability to pay before imposing monetary obligations. Id,; State v. Hayes, 56 Wash.App. 451, 453-54, 783 P.2d 1130 (1989). The better interpretation of RCW 9.94A.634 is that once the State has proven the violation, the burden shifts to the defendant to prove the violation was not willful. Campbell, 84 Wash.App. at 600 n. 1, 929 P.2d 1175; State v. Gropper, 76 Wash.App. 882, 887, 888 P.2d 1211 (1995).
In essence, Mr. Woodward contends his payment violation was not willful because he was too impoverished to pay. It is well-settled that a court may not incarcerate a truly indigent noncomplying offender solely because the person's indigency renders him or her unable to pay legal financial obligations. Bearden v. Georgia, 461 U.S. 660, 668, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State v. Barklind, 87 Wash.2d 814, 817-18, 557 P.2d 314 (1976); State v. Bower, 64 Wash.App. 227, 231, 823 P.2d 1171 (1992) (Bower I).
However, a probationer's failure to make sufficient bona fide efforts to seek employment or to borrow money or otherwise to legally acquire resources in order to pay his court-ordered financial obligation may reflect an insufficient concern for paying the debt he owes to society for his crimes. In such a situation, a court may revoke probation and use imprisonment as an appropriate remedy.
Bower I, 64 Wash.App. at 231-32, 823 P.2d 1171 (citing Bearden, 461 U.S. at 668, 103 S.Ct. 2064; Barklind, 87 Wash.2d at 817-18, 557 P.2d 314).
When the probationer has made reasonable efforts to meet his court-ordered financial obligations, and yet cannot do so, through no fault of his own, it is "`fundamentally unfair to revoke probation automatically.'" Bower I, 64 Wash.App. at 232, 823 P.2d 1171 (quoting Bearden, 461 U.S. at 668, 103 S.Ct. 2064).
"A defendant who claims indigency must do more than simply plead poverty in general terms...." Bower I, 64 Wash.App. at 233, 823 P.2d 1171.
He should be prepared to show the court his actual income, his reasonable living expenses, his efforts, if any, to find steady employment, his efforts, if any, to acquire resources from which to pay his court-ordered obligations, and, ... [if relevant]... any lawful excuse he might have for his failure to report for community supervision.
Id.
Prior to the hearing, Mr. Woodward's financial situation was murky. He submitted no financial affidavit in connection with the 2002 violations. A July 2001 affidavit asserted no income at all because he was in jail. The most recent affidavit listing income was in October 2000, when Mr. Woodward stated he lived with his mother and had a monthly SSI income of $450 with $195 in total expenses.
In November 2001, Mr. Woodward wrote to the Douglas County FCO and stated he was soon to get out of jail and that he expected to be "back on G.A.U. [government assistance] by the first of JanuaryAt that time I'll begen [sic] payments to you." Clerk's Papers (CP) at 66. He signed a stipulated order to pay $25 per month starting in January 2002. He also sent the FCO a letter stating, "I agree to pay starting January $25.00." CP at 69.
But Mr. Woodward made no payments and failed to appear at the scheduled review meeting in March. The record indicates no effort on the part of Mr. Woodward to contact the FCO to explain his alleged difficulties. And, as noted, he submitted no affidavit regarding his financial situation.
At the hearing, Mr. Woodward claimed his sole source of income was $340 a month in government assistance. He also stated he *535 paid $175 in rent and "a little bit more" than $75 in electricity, utilities, and food each month. RP at 28.
Mr. Woodward claimed he could no longer work because he had emphysema, which would require removal of a lung. He claimed he was waiting for SSI settlement money, and intended to use that money to pay his obligations and his medical expenses. But, on cross-examination, Mr. Woodward admitted he had expected the SSI money to take two to three years to arrive and, therefore, he had merely hoped to get the SSI money by January 2002. No documents corroborate Mr. Woodward's SSI and disability claims. Mr. Woodward requested work release in late August 2001, a fact he refuted at the hearing, claiming there was another John Woodward at the jail. Mr. Woodward's lack of candor reflects poorly on his overall credibility.
Mr. Woodward is impoverished. The trial court did not disagree, but it reasoned Mr. Woodward could "probably afford to pay something a month, even if it's five bucks a month." RP at 36. The trial court was offended that Mr. Woodward was not "even making an effort to pay five dollars a month." RP at 36-37. Although Mr. Woodward lamented generally that he did not have enough to live on, his own testimony indicates he had approximately $90 a month remaining after expenses, including food. That testimony supports the trial court's assessment that Mr. Woodward could afford monthly payments of at least $5. See Campbell, 84 Wash.App. at 600, 929 P.2d 1175 (holding record supported trial court's finding that low income defendant could make payments).
Mr. Woodward contends it is absurd for the State to keep pursuing him on his obligations. Any discussion of Mr. Woodward's "future ability to pay is necessarily speculative." State v. Bower, 64 Wash.App. 808, 814, 827 P.2d 308 (1992) (Bower II). He can petition the court if he is unable to meet his obligations in the future. Id. If he can establish to the trial court's satisfaction that he is so utterly destitute and lacking in prospects as to make even minimal payments a hardship, the trial court could exercise its discretion to modify his obligations in light of his changed financial circumstances. RCW 9.94A.753(2); RCW 9.94A.760(7). Mr. Bower did not follow those procedures in connection with his most recent violations; instead, he chose to ignore his obligations.
Here, the trial court did not incarcerate Mr. Woodward for his alleged inability to pay, but rather because he made no effort at all to pay even a token amount. Stated another way, the trial court punished Mr. Woodward for his recalcitrance, not for his indigency. And Mr. Woodward's vague and evasive testimony failed to establish the violation was not willful. Rather, the record reflects Mr. Woodward's "insufficient concern for paying the debt he owes to society for his crimes." Bower I, 64 Wash.App. at 232, 823 P.2d 1171. Consequently, the trial court did not err in imposing 120 days confinement for the two most recent violations.
Affirmed.
WE CONCUR: SWEENEY and KURTZ, JJ.
NOTES
[1] At the relevant time, the concerned statute was RCW 9.94A.200. In 2002, the Legislature renumbered it as RCW 9.94A.634. Laws of 2002 ch. 175 § 8. We will cite the current statute, which is substantially unchanged.