# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71225-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MOHAMMAD DABBAGH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: May 4, 2015 |
| | ) | |

VERELLEN, A.C.J. — Mohammed Dabbagh challenges the trial court's orders clarifying that the term "comply" with treatment meant to "make reasonable progress" in treatment and subsequently imposing 60 days' confinement for willful violations of his sentencing conditions. Dabbagh argues the trial court lacked authority to impose a sentencing condition that he make reasonable progress in treatment. He also argues the clarification was an unauthorized modification of his sentence. But our Supreme Court has held that a trial court "has authority to require an offender to make reasonable progress" in treatment.[1] In addition, when a trial court merely clarifies a defendant's sentencing condition, the trial court acts within its statutory authority under the Sentencing Reform Act of 1981, ch. 9.94A RCW. Accordingly, we affirm.

---

[1] State v. Riles, 135 Wn.2d 326, 352-53, 957 P.2d 655 (1998), abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010).

## FACTS

Dabbagh pleaded guilty to one count of second degree assault.[2] He admitted in his plea agreement that he intentionally assaulted and recklessly inflicted substantial bodily harm on the child victim, his daughter. For the plea agreement, Dabbagh agreed that the trial court could consider the affidavit of probable cause for sentencing purposes. The affidavit of probable cause alleged Dabbagh sexually assaulted his daughter for several years.

The trial court imposed several sentencing conditions. In particular, Dabbagh had to obtain a sexual deviancy evaluation and "comply with all recommendations."[3] Dabbagh also had to participate in and "fully comply with all recommended" domestic violence batterer's treatment.[4]

Dabbagh sought treatment from Norman Nelson, a state-certified treatment provider. Nelson's first progress report stated Dabbagh "completely denies any wrongdoing regarding the parenting and care he provided his children" and only accepts responsibility for "'grabbing her.'"[5]

Nelson's second progress report, submitted after six treatment sessions, concluded Dabbagh was "not an appropriate candidate" for domestic violence treatment for several reasons.[6] First, Nelson believed Dabbagh was unamenable to treatment

---

[2] The State initially charged Dabbagh with one count of second degree child molestation and one count of second degree incest.

[3] Clerk's Papers (CP) at 67.

[4] Id. at 67.

[5] Id. at 57.

[6] Id. at 52. Nelson later clarified at a July 2013 review hearing that he did believe Dabbagh was an appropriate candidate for domestic violence treatment. But he believed Dabbagh could benefit more from individual therapy as opposed to group therapy.

2

because his limited knowledge of English impeded his ability to discuss "personal issues."[7] Second, Dabbagh refused to accept any responsibility or accountability for his actions and denied sexually abusing his daughter. Third, Dabbagh was unwilling to examine his core beliefs or to be transparent and disclose personal information reflecting poorly upon him or his family. Nelson determined that Dabbagh was noncompliant with treatment.

At a July 2013 review hearing, the trial court determined that "[i]nherent in [the sentence] is the understanding that [Dabbagh] will comply and *make reasonable progress* in treatment."[8] The trial court further clarified that when the judgment and sentence states "'comply with treatment', that means just *to make reasonable progress in treatment*. He can be violated for failing to make reasonable progress in treatment. What that might consist of is really up to the treatment provider."[9] The trial court's written order states that Dabbagh must comply with all treatment recommendations, with "comply" meaning to "make reasonable progress."[10] Dabbagh did not object to this determination.

Nelson later submitted a domestic violence assessment, a sexual deviancy assessment, and a third progress report to the trial court. Nelson recommended terminating Dabbagh's sexual deviancy treatment because Dabbagh was unwilling in good faith to make "reasonable progress" in treatment and was therefore "out of compliance" with the trial court's order.[11] Nelson terminated Dabbagh from domestic

---

[7] Id. at 52.

[8] Report of Proceedings (RP) (July 2, 2013) at 33 (emphasis added).

[9] Id. (emphasis added).

[10] CP at 50.

[11] Id. at 20.

violence treatment for several reasons, most important of which was Dabbagh's unwillingness "to voluntarily engage in meaningful treatment."[12]

The trial court determined that Dabbagh willfully violated several sentencing conditions because he was terminated from his domestic violence treatment and because he failed to comply with his sexual deviancy treatment program. Specifically, he refused access to persons that potentially held relevant information to his treatment. Consequently, Dabbagh had failed to make reasonable progress in treatment. The trial court sentenced Dabbagh to 60 days' confinement. The trial court supplemented its order to clarify that Dabbagh "willfully and in bad faith failed to make a good faith effort to comply with [domestic-violence] and [sexual] deviancy treatment."[13]

Dabbagh appeals.

## ANALYSIS

Dabbagh contends the trial court's orders violated due process. He specifically contends the trial court had no authority to impose a sentencing condition that he make reasonable progress in treatment. He also contends that the trial court had no authority to impose a sanction of confinement beyond that authorized by the Sentencing Reform Act. We disagree.

Sentencing conditions will be reversed if they are manifestly unreasonable.[14] Imposing an unconstitutional sentencing condition is manifestly unreasonable.[15] "A condition may be manifestly unreasonable if the trial court has no authority to impose

---

[12] Id. at 14.

[13] Id. at 5.

[14] Valencia, 169 Wn.2d at 791-92.

[15] Id. at 792.

it."[16] But a trial court "has authority to require an offender to make reasonable progress" in treatment.[17] "[R]easonable progress simply means an offender must actively participate in the program and cooperate with treatment."[18]

Although the phrase "reasonable progress" is not used in the Sentencing Reform Act, "the statute does provide that the offender 'shall participate.'"[19] Our Supreme Court in State v. Riles determined "participate," as used in the Sentencing Reform Act, means "'to join or share with others . . . [to] take part.'"[20] Riles also determined that "'participate' means more than merely being present" and also "requires active involvement."[21] "If an offender is not actively participating in treatment, but is merely passively present, treatment cannot be effected."[22]

Inherent in a trial court's imposition of a sentencing condition that requires a defendant to participate in treatment is that the defendant must make a good faith effort in treatment. In its ruling, the trial court expressly determined that Dabbagh had "wilfully and in bad faith failed to make any good faith effort in treatment" and "wilfully and in bad faith did not make good faith efforts to comply with and complete treatment."[23] The trial

---

[16] State v. Vant, 145 Wn. App. 592, 602-03, 186 P.3d 1149 (2008); State v. Warnock, 174 Wn. App. 608, 611, 299 P.3d 1173 (2013).

[17] Riles, 135 Wn.2d at 352-53.

[18] Id. at 353.

[19] Id. at 351.

[20] Id. (alteration in original) (quoting WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 857 (1984)).

[21] Id.; see also State v. Eaton, 82 Wn. App. 723, 734, 919 P.2d 116 (1996) ("['Participate'] connotes an active presence in which one contributes something to a common enterprise.").

[22] Riles, 135 Wn.2d at 351.

[23] RP (Dec. 4, 2013) at 12.

court found that Dabbagh failed to comply with its order "by being terminated from his [d]omestic [v]iolence treatment program" and failed "to comply with his sexual deviancy treatment program by refusing access to need-to-know persons that potentially hold information relevant to the defendant's treatment."[24]

The record here does not support Dabbagh's contention that he could not satisfy his sentencing condition of making reasonable progress in treatment. Rather, Dabbagh's recalcitrant conduct in failing to make a good faith effort in treatment prevented his compliance with the trial court's order. For example, Dabbagh conversed with Nelson without an interpreter on a wide variety of topics. But when the inquiry shifted to topics pertinent to treatment, Dabbagh refused "to reveal information that might reflect negatively on him, his parenting style, or family members," even with an interpreter present.[25] In treatment, "Dabbagh was not readily forthcoming in his responses to interview questions regarding his personal sexual experiences, nor his sexual thoughts, feelings, and behaviors."[26] "His answers to questions were often defensive, suspicious[,] and guarded" and "[h]is answers to open-ended questions [were] generally close-ended responses."[27] In addition, although Dabbagh gave Nelson the names of persons who could provide information about his family life, he prohibited Nelson from contacting those individuals. The record supports that Dabbagh "was unwilling to voluntarily engage in meaningful treatment" and actively participate in treatment in good faith.[28]

---

[24] CP at 2.

[25] Id. at 13.

[26] Id. at 25.

[27] Id. at 27.

[28] Id. at 14.

Therefore, consistent with Riles, the trial court had authority to require Dabbagh to make reasonable progress in treatment.

Dabbagh contends the trial court's order unlawfully modified his sentence when it required him, in order to comply with treatment, to make reasonable progress in treatment. We disagree.

We review whether a "trial court has exceeded its statutory authority" under the Sentencing Reform Act de novo.[29] "A trial court may only impose a statutorily authorized sentence."[30] "If the trial court exceeds its sentencing authority, its actions are void."[31] The Sentencing Reform Act permits "modification of sentences only in specific, carefully delineated circumstances."[32] But a trial court has authority to clarify a sentencing condition it previously imposed.[33]

The trial court initially ordered Dabbagh to obtain a sexual deviancy evaluation and "comply with all recommendations" and to participate in a domestic-violence treatment program and "fully comply with all recommended treatment."[34] The trial

---

[29] State v. Murray, 118 Wn. App. 518, 521, 77 P.3d 1188 (2003).

[30] State v. Paulson, 131 Wn. App. 579, 588, 128 P.3d 133 (2006); State v. Barnett, 139 Wn.2d 462, 464, 987 P.2d 626 (1999).

[31] Paulson, 131 Wn. App. at 588.

[32] State v. Shove, 113 Wn.2d 83, 86, 776 P.2d 132 (1989).

[33] State v. Moultrie, 143 Wn. App. 387, 400, 177 P.3d 776 (2008) (remanding to the trial court to clarify the sentencing condition prohibiting contact with "vulnerable" and "disabled" adults); State v. Johnson, 180 Wn. App. 318, 325, 332, 327 P.3d 704 (2014) (remanding to the trial court to clarify the sentencing condition prohibiting contact with physically or mentally "vulnerable" individuals).

[34] CP at 67.

court's July 2013 order determined, consistent with its oral ruling, that the word "comply" with treatment meant to "make reasonable progress" in treatment.[35]

The impetus for the trial court's July 2013 order was Nelson's June 2013 progress report. In that report, Nelson commended Dabbagh for his punctuality, friendliness, and cooperativeness in treatment. But Nelson also believed Dabbagh was not an "appropriate candidate" for domestic violence treatment because he did not accept responsibility, he was unwilling to examine his core beliefs or disclose personal information reflecting poorly on his family, and he was not transparent. Because Dabbagh's conduct at the initial treatment sessions suggested he believed compliance with the sentencing conditions meant merely attendance alone, the trial court's order clarified that compliance with treatment meant both to actively participate and to make reasonable progress in treatment.

There are cases that have held a trial court exceeded its authority by modifying a defendant's sentence. But those cases are distinguishable. For example, State v. Brown held that the trial court did not have authority to modify a judgment and sentence to include a lifetime no-contact order with a witness.[36] While the trial court in Brown had authority to impose a no-contact order if it was "related to the circumstances of the crime," the trial court did not have authority "to *modify* the sentence to add other names to the no-contact order at a later date."[37] State v. Shove held that because the Sentencing Reform Act did not allow the trial court to reduce the defendant's sentence, the trial court lacked statutory authority to modify the defendant's sentence by reducing

---

[35] Id. at 50; see also RP (July 2, 2013) at 33 (stating that to "comply with treatment" means "just to make reasonable progress in treatment").

[36] 108 Wn. App. 960, 961, 963, 33 P.3d 433 (2001).

[37] Id. at 962-63.

it.[38] Similarly, State v. Murray held that the trial court lacked statutory authority to modify the defendant's sentence by changing the form of the defendant's partial confinement.[39] The Sentencing Reform Act did not allow for this modification, and therefore, the trial court exceeded its authority. Moreover, State v. Harkness held that the trial court exceeded its authority by modifying the defendant's sentence postjudgment to one under the drug offender sentencing alternative.[40]

Unlike the cases cited above, the trial court here merely clarified the meaning of Dabbagh's sentencing conditions. The trial court's order neither expanded or reduced the scope of Dabbagh's sentencing conditions nor changed the character of Dabbagh's treatment. The trial court has authority to clarify that compliance with treatment means to make reasonable progress.

Dabbagh also argues we should vacate the trial court's order imposing 60 days' confinement because the trial court had already imposed the high end of the standard range. We disagree.

A trial court may impose up to 60 days' confinement for each violation "of any condition or requirement of a sentence."[41] "The trial court may impose consecutive terms of confinement for each violation relevant to the proceeding so long as the total period of confinement does not exceed the maximum term of the underlying conviction."[42] Because the maximum penalty for second degree assault is 10 years'

---

[38] 113 Wn.2d 83, 89, 776 P.2d 132 (1989).

[39] 118 Wn. App. 518, 524, 77 P.3d 1188 (2003).

[40] 145 Wn. App. 678, 685-86, 186 P.3d 1182 (2008).

[41] RCW 9.94A.633(1)(a); State v. Woodward, 116 Wn. App. 697, 702, 67 P.3d 530 (2003).

[42] Woodward, 116 Wn. App. at 702.

confinement, the trial court's sanction of 60 days' confinement here did not exceed the maximum term of the underlying conviction.[43] Therefore, the trial court did not exceed its statutory authority under the Sentencing Reform Act in imposing 60 days' confinement for Dabbagh's willful violations of his sentencing conditions.

We affirm.

_____

WE CONCUR:

_____
Cox, J.

_____
Becker, J.

---

[43] RCW 9A.36.021(2)(a); RCW 9A.20.021(1)(b).