IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RUBYE M. AMES, individually and as successor in interest to ROY A. AMES, deceased,[†] | ) ) ) ) | No. 34044-9-III |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| WESLEY B. AMES, individually; and STANLEY R. AMES, individually, | ) ) ) | UNPUBLISHED OPINION |
| Appellants, | ) ) | |
| AMES DEVELOPMENT CORPORATION, an Oregon corporation; and MERITA DYSART, individually, | ) ) ) ) | |
| Defendants. | ) ) | |

---

[†] Roy Ames died during the pendency of this appeal. Our commissioner has ordered Rubye Ames, as the successor to Roy's interests, be substituted for Roy Ames as a party to this appeal. Commissioner's Ruling, No. 34044-9-III (Wash. Ct. App. July 24, 2016). We hereby order the appellate case caption be amended consistent with that ruling.

PENNELL, J. — This is a second appeal from brothers Wesley and Stanley Ames (collectively "the Ames brothers" or "the brothers") arising from a lawsuit initiated in 2011 by their parents, Roy and Rubye Ames (collectively "the Ames parents" or "the parents"). In the first appeal, we upheld the terms of a life estate granted to the Ames parents permitting the harvest and salvage of timber. Prior to our disposition, the parents' rights to log merchantable timber had been stayed through two bonds posted by the brothers. Once the appeal ended, the parents requested the stay be lifted. They also sought forfeiture of the bond funds, disbursement of logging proceeds held in trust, leave to complete logging operations, and additional money damages as compensation for the delayed timber harvest. The trial court granted the parents' requests in full.

We find the trial court's disposition largely justified, with the exception of three damage categories that lack factual support: (1) the court's calculation of interest owing on the brothers' $8,230.00 share in costs associated with suspended logging operations, (2) $26,737.07 in lost rental income, and (3) $4,994.89 in excess insurance costs. The court's disbursement and release orders and judgment are therefore affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings.

## FACTS

Many of the pertinent facts have been set forth in our prior published opinion,

2

No. 34044-9-III
*Ames v. Ames*

*Ames v. Ames*, 184 Wn. App. 826, 340 P.3d 232 (2014) (the 2013 appeal). They need not

be repeated in detail. In brief, this case involves a familial dispute over the title and use

of farm and timber land in Stevens County. Prior to the 2013 appeal, the Stevens County

Superior Court determined the Ames brothers owned the property, subject to a life estate

held by their parents. While the parents were permitted to benefit from their land during

the term of their life estate, the court placed certain limitations on the use of the land to

protect against waste. Ultimately, the parents were allowed to harvest up to 19 mbf[1] per

year of timber plus removal of "salvage" timber, as that term is defined by WAC 222–16–

010. Any logging proceeds beyond the 19 mbf plus salvage were to be divided between

the parents and brothers pursuant to a ratio of 60 percent (to the parents) to 40 percent (to

the brothers). The court noted that, for the first two years, additional thinning and salvage

for the health and growth of the existing timber could reach 400 mbf.

Pertinent to this case, the Ames brothers obtained a stay of the superior court's

order pending reconsideration. They filed a $10,000 cash bond. Prior to issuing an order

on reconsideration, the trial court partially granted a motion filed by the parents and

ordered the parents be permitted immediate harvest of a limited amount of timber.

Despite this permission, confusion over logging rights persisted, resulting in costs

---

[1] One mbf equates to one thousand board feet of timber.

3

associated with the suspension of logging operations in March 2013. The trial court subsequently denied the Ames brothers' motion for reconsideration.

Upon denial of reconsideration, the Ames brothers sought a stay of the judgment pending appeal. Originally, the trial court ordered a supersedeas bond of $55,000 and permitted release of $8,230 from the $10,000 cash bond to the Ames parents as compensation for the brothers' 50 percent share in expenses incurred as a result of the suspension of logging operations. The court also suspended all logging operations pending appeal beyond what was necessary for previously felled trees. In a subsequent order, the court stayed enforcement of the order pertaining to the $10,000 cash bond and decreased the supersedeas bond to $45,000.

Our decision on appeal affirmed the trial court's rulings and left the issue of forfeiture of the supersedeas bond to be settled on remand.

On remand, the Ames parents filed four motions with the trial court:

1. A motion for disbursement of $15,651.22 in logging proceeds held in their trial attorney's trust account. The proceeds were from operations prior to the court's final stay. The parents' requested $16,098.76, including interest at a rate of 12 percent per year, that would have been realized from the timber harvest and salvage during 2013, 2014 and 2015 had the court's

order not been stayed. Because the $15,651.22 held in trust did not cover all of the lost timber harvest and salvage proceeds, the parents asked that the balance of $447.54 be disbursed from the $45,000.00 supersedeas bond.

2. An amended motion for forfeiture of the $10,000 cash bond, adding interest for 26 months at a rate of 18 percent (1.5 percent per month). Because the $10,000 cash bond was not sufficient to cover the original $8,230 plus interest owed by the brothers for their share of expenses related to the suspension of logging operations, the parents asked that the remainder be taken from the $45,000 supersedeas bond.

3. A motion for forfeiture of the $45,000 supersedeas bond to cover the excess losses related to logging proceeds and the $8,230 award; logging costs incurred due to an inability to complete the timber harvest; lost rental value due to the parents' inability to complete an addition on their home; and excess insurance costs due to an inability to complete the timber harvest.

4. A motion to resume logging operations pursuant to the guidelines laid out in the report by Robert Broden that had been relied on by the superior court in its prior ruling.

5

According to the parents, their total costs required forfeiture of both the

$10,000.00 and $45,000.00 bonds and resulted in a deficiency balance of $13,893.45.

After considering declarations and supporting documents from both parties, the

trial court issued a decision granting the parents' motions. No evidentiary hearing was

held. The court noted that due to the stay pending appeal, the parents were unable to

conduct thinning of the trees on their land as has been recommended by their timber

expert. They were also unable to log on their property for over twenty-six months and

realize the proceeds therefrom. Based on this loss of income-generating activity, along

with the time spent on appeal, the court determined the parents were entitled to the

following:

- $16,098.76 (which includes 12 percent interest) for lost timber proceeds;

- $3,209.70 (including 1.0 percent per month interest for 31 months)[2] for interest

  from the $8,230.00 forfeiture ordered by the court in June 2013 and secured by the

  $10,000 cash bond;

- $4,994.89 in added insurance costs for 23 months (including interest at 1 percent

  per month);

---

[2] The trial court came to the same final number as recommended by the parents. However, the parents claimed they were using an interest rate of 1.5% per month, over a period of 26 months.

6

- $26,737.07 in lost rental income for 31 months (including interest at a rate of 12 percent); and

- $25,274.25 in excess logging costs over 13 months related to timber salvage efforts (including interest at a rate of 1.5 percent per month).

In issuing its findings of fact, conclusions of law and order, the trial court found there was no evidence to support the brothers' allegations that the parents, along with Randall Ames, had been taking timber in violation of court orders. The court found the parents' logging costs reasonable under the circumstances and that there had been no unauthorized taking of firewood or other waste on the property. In summary, the trial court ordered forfeiture of both bonds, the resumption of logging operations, and the disbursement of logging proceeds held in trust, and entered a judgment against the brothers for the $13,893.45 deficiency balance. The Ames brothers appeal.

## ANALYSIS

The brothers' appeal the court's orders on remand, permitting resumption of logging and disbursing funds. As pointed out by the parents, the brothers' opening brief fails to properly assign error to any findings of fact or identify the issues on review, as required by RAP 10.3(a)(4), 10.3(g), and 12.1(a). Nevertheless, rather than require correction or impose sanctions, we proceed to the merits in the interests of justice.

7

RAP 1.2.

*Trial court's use of declarations*

The Ames brothers assert the trial court erred by considering two declarations from the parents' timber consultant, Robert Broden, during the proceedings on remand. According to the brothers, the Broden declarations did not meet the standards for admissibility under *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923) or ER 702 and 703.

While the brothers have consistently objected to the persuasive value of the Broden declarations, no objection was made during the remand proceedings asserting that the declarations were inadmissible. We will not review this issue for the first time on appeal.

*Whether substantial evidence supports the trial court's rulings*

*Standard of review*

Throughout their briefing, the brothers argue the evidence presented in support of the parents' motions on remand was fraudulent. Because we are not fact finders, this is an allegation we are unable to address. However, as part of their fraud allegations, the brothers also claim the parents' evidence did not provide a sufficient evidentiary basis for the trial court's rulings. This is a cognizable argument on appeal.

Our sufficiency analysis turns on whether the trial court's factual findings are supported by substantial evidence. *Hegwine v. Longview Fibre Co.*, 132 Wn. App. 546, 555-56, 132 P.3d 789 (2006), *aff'd*, 162 Wn.2d 340, 172 P.3d 688 (2007). We will not reweigh the evidence presented to the trial court or assess the credibility of witnesses. *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 35-36, 226 P.3d 263 (2010).

With the deferential sufficiency standard in mind, we turn to each of the trial court's rulings on appeal.

*Disbursement of logging proceeds*

The brothers make two claims regarding their parents' motion to disburse logging proceeds: (1) the parents failed to account for all of the timber they have harvested, and (2) the $270 per mbf cost for logging and hauling is not supported by any evidence in the record. Neither allegation warrants relief.

The motion to disburse logging proceeds was premised on the assumption that the parents had not harvested any of their annual allotment of 19 mbf of timber during the pendency of the 2013 appeal. The motion also sought recovery for salvage timber that naturally would have died, and therefore been lost to harvest, during the appeal period. Declarations from Randall Ames and Robert Broden support the trial court's finding that the parents had not engaged in unauthorized timber practices during the course of the

appeal. That information was sufficient to justify the court's verdict. We will not second guess the trial court's credibility determination. *See Vermette v. Andersen*, 16 Wn. App. 466, 470, 558 P.2d 258 (1976).

With respect to logging costs, the brothers' arguments fail due largely to lack of prejudice. The parents requested payment for 19 mbf per year of timber, plus salvage, that they would have realized had timber harvesting not been stayed. This request was limited to proceeds that the parents were entitled to in full, prior to any split in proceeds with the brothers.[3] As noted by the brothers, the parents assumed high costs for logging and hauling. Although this assumption was factually debatable (though not without support), it ultimately benefitted the brothers. In calculating high costs, the parents lowered their estimate of lost profits. Given this combination of circumstances, we discern no error in the trial court's decision to adopt the parents' loss calculations.

*Forfeiture of the $10,000 bond*

This court previously upheld the trial court's order requiring the brothers to forfeit $8,230 of the $10,000 bond to cover the brothers' share of damages, incurred by the Ames parents, due to the stay pending the brothers' motion for reconsideration prior to

---

[3] In the 2013 appeal, we recognized that 500 mbf of growth in timber between 1997 and 2013 belonged solely to the Ames parents under the general rule of life estates. *Ames*, 184 Wn. App. at 852-53.

the 2013 appeal. *Ames*, 184 Wn. App. at 855-56. This ruling is final and will not be reconsidered. However, during the proceedings on remand, the parents requested interest on the $8,230 award because forfeiture had been stayed pending appeal. The trial court's disposition of this request was not part of the prior appeal. This issue is therefore ripe for our review.

In their motion to the trial court, the parents requested $3,209.70 in interest be added to the original award of $8,230.00. This was based on a rate of 1.5 percent per month (18 percent annually) for 26 months. The record does not explain where the parents obtained this interest rate. The default rate in Washington is 12 percent per annum. RCW 19.52.020(1); *see also* RCW 4.56.110(4).

The trial court granted the parents' request for $3,209.70 in interest. But it used a different method of calculation. Instead of 18 percent, the trial court used Washington's default rate of 12 percent. In addition, instead of an interest period of 26 months, the trial court utilized a period of 31 months. *Id.* The record does not explain this discrepancy between the parents' request and the court's final order. Furthermore, the court's mathematical calculations are incorrect. The interest accrued on $8,230.00 using a rate of 12 percent (1.0 percent per month) for 31 months results in award of $2,551.30, not $3,209.70.

11

The unexplained discrepancies between the parents' request for interest and the trial court's ultimate award of interest requires correction on remand. Because the record contains no justification for an alternate interest rate, the rate used by the court on remand shall be 12 percent.

*Forfeiture of the $45,000 bond*

In addition to covering other excess losses,[4] the parents requested forfeiture of the $45,000 supersedeas bond to cover lost rent, increased insurance costs, and unpaid logging costs. Only the last of these three additional requests is justified by the record on appeal.

The appellate record contains ample evidence supporting the parents' request for $25,274.25 in unpaid logging expenses. Contained in the record is a declaration from the parents' logging contractor and a supporting invoice. The invoice specifies an interest rate of 1.5 percent per month. This information justified the trial court's decision to award reimbursement to the parents.

In contrast to the record regarding logging expenses, there is scant evidence in our record regarding lost rental income and increased insurance costs. In a post-hearing

---

[4] Losses resulting in deficiencies of the $10,000 cash bond and insufficient logging proceeds held in the attorney trust account.

memorandum filed with the trial court, the parents submitted a list of references to the pre-appeal trial record that purported to support their requests. The trial court appears to have relied on this evidence in issuing its orders. We find it questionable whether evidence submitted prior to appeal could substantiate the parents' request for losses sustained during appeal. Financial circumstances and plans change over time. *See, e.g., State v. Barklind*, 87 Wn.2d 814, 817, 557 P.2d 314, *aff'd*, 87 Wn.2d 814, 557 P.2d 314 (1976) (noting potential of change in economic circumstances for indigent criminal defendants); *In re Marriage of Tower*, 55 Wn. App. 697, 702-03, 780 P.2d 863 (1989) (discussing how the financial position of former spouses can change over time following a divorce or separation). But in any event, the pre-appeal evidence apparently relied on by the trial court is not a part of our appellate record. We are therefore unable to conduct a sufficiency analysis.[5] At oral argument, counsel for the parents was encouraged to supplement the appellate record with the documents relied on by the trial court. No action has been taken in this regard. Reversal of the awards for lost rental income and increased insurance costs, and remand, is therefore warranted.

---

[5] The record on appeal does contain documentation of increased insurance costs that were sustained during the appeal period. However, we do not have any evidence tying these increased costs to lost timber revenue.

*Resumption of logging operations*

Finally, the brothers argue the trial court should not have allowed the parents to resume logging operations because testimony from their experts indicated the parents had violated the terms of court orders and harvested more timber than had been allotted. We are unpersuaded. As previously noted, the trial court had sufficient evidence to find the parents had not engaged in excessive logging during appeal. To the extent the brothers are alleging ongoing efforts by the parents or third parties to lay waste to the property after conclusion of the appeal, their allegations fall outside the scope of this case. As we determined in the previous appeal, the Ames parents were properly awarded a life estate and timber harvest rights. Because that determination is final, the trial court correctly lifted the stay and permitted the parents to resume harvest operations.

*Sanctions and frivolous appeal*

The parties each request sanctions on appeal pursuant to RAP 18.9(a). Because each side has prevailed in part, sanctions are inappropriate.

## CONCLUSION

The trial court's judgment and orders to disburse and release funds are affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings, consistent with this opinion.

14

No. 34044-9-III
*Ames v. Ames*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Korsmo, J.