IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38281-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ELIJAH E. ROWLEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Elijah Rowley appeals the imposition of a $500 crime victim

penalty assessment as a result of his conviction for failing to register as a sex offender.

We affirm.

FACTS

Mr. Rowley was convicted at a bench trial of failing to register as a sex offender.

At sentencing, the State requested a sentence of 32 days in custody with all but two days

suspended. The State also recommended the court waive discretionary legal financial

obligations (LFOs), but impose the mandatory $500 crime victim penalty assessment

(VPA). The State asked the court to establish a payment schedule of $35 per month.

The court's sentencing colloquy with Mr. Rowley focused on Mr. Rowley's

financial circumstances. Mr. Rowley stated he was unemployed and did not have any

income, but he had a variety of past work experiences, including recent work at the

Ponderosa Motel. Mr. Rowley also commented that he lived with an 83-year old woman

for whom he provided assistive care. Mr. Rowley did not specify whether he had any

expenses relating to this circumstance.

The trial court imposed 10 days of jail time, no community custody and the

mandatory $500 VPA. All other LFOs were waived based on Mr. Rowley's indigence.

The court ordered Mr. Rowley to make payments toward the VPA of $35 per month, but

deferred payments for approximately two and one-half months to allow Mr. Rowley time

to find employment.

At no point during sentencing did Mr. Rowley object to imposition of the VPA.

After sentencing, Mr. Rowley filed a motion and supporting declaration for

an order of indigence on appeal. In the declaration, Mr. Rowley represented he was

unemployed, had no assets, was $700 in debt, and had earned $500 in the last year,[1]

and that he had two dependent children.

Mr. Rowley has filed a timely appeal.

---

[1] Mr. Rowley's declaration that he had made only $500 in the past year is in tension with his oral representation to the court that he had worked at the Ponderosa Motel for 4 to 5 months, with his last day of work being just a "week or two" before sentencing. 1 Report of Proceedings (Jun. 23, 2021) at 123.

No. 38281-8-III
*State v. Rowley*

ANALYSIS

Mr. Rowley's sole issue on appeal is the constitutionality of the $500 VPA as required by RCW 7.68.035(1)(a). Mr. Rowley contends imposition of the $500 VPA in his case violates the excessive fines clause of the Washington Constitution. The State does not argue Mr. Rowley has waived his constitutional challenge by failing to raise this issue in the trial court. *See* RAP 2.5(a). We therefore review Mr. Rowley's constitutional challenge de novo. *See City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004).

Both the state and federal constitutions prohibit imposition of excessive fines. WASH. CONST. art. I, § 14; U.S. CONST. amend. VIII. To trigger an excessive fine protection, "a sanction must be a 'fine' and it must be 'excessive.'" *City of Seattle v. Long*, 198 Wn.2d 136, 162, 493 P.3d 94 (2021).

Because the "excessive" prong is dispositive in this case, we focus our attention on the second element of the constitutional test. A key component of this prong is consideration of the defendant's ability to pay. *Id*. at 168-73.[2] To meet constitutional

---

[2] Other factors include "'(1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused.'" *Id.* at 173 (quoting *State v. Grocery Mfrs. Ass'n*, 195 Wn.2d 442, 476, 461 P.3d 334 (2020)).

3

scrutiny, a fine must not be so oppressive as to deprive an individual of "their ability to live." *Id*. at 172. However, the mere imposition of a fine does not raise this threat. It is the collection of the fine that matters. In *State v. Curry*, our Supreme Court held that the time for assessing a constitutional challenge to a defendant's ability to pay is at the point of collection, not when the obligation is initially imposed. 118 Wn.2d 911, 917-18, 829 P.2d 166 (1992).[3]

Mr. Rowley claims *Curry* is inapposite because it involved equal protection and due process challenges, not an excessive fines claim. We disagree with this assessment. "*Curry*'s reasoning is vague; it does not state precisely what constitutional arguments it took into account." *State v. Tatum*, 23 Wn. App. 2d 123, 130, 514 P.3d 763, *review denied*, __ Wn.2d __, 520 P.3d 977 (2022). The Supreme Court's concern in *Curry* was the constitutionality of the VPA "in light of indigent defendants' potential inability to pay." *Id*. We therefore read *Curry* as applicable to an excessive fines claim, at least to the extent the claim is rooted in a defendant's inability to pay.

Given this is an appeal from a judgment and sentence, the record on review cannot and does not reflect an attempt to collect Mr. Rowley's $500 VPA. It is therefore

---

[3] This contrasts with *Long* where the issue was a vehicle impound. The Supreme Court analyzed Mr. Long's financial circumstances at the time of the impoundment. *Long*, 198 Wn.2d at 174.

impossible to discern whether future $35 monthly payments will pose a hardship to Mr. Rowley's livelihood. Mr. Rowley has worked in the past and it appears he may have minimal expenses given his role as a caregiver to an elderly woman. Furthermore, the $500 VPA is not subject to accrual of interest. RCW 10.82.090. Whether Mr. Rowley will be able to pay the $500 VPA and still meet his other living expenses is not something that can yet be discerned. In light of the analysis dictated by *Curry*, we cannot conclude the $500 VPA is constitutionally excessive. *See Tatum*, 23 Wn. App. 2d at 130-31 (*Curry* bars a defendant's excessive fines challenge to the VPA.).

Our holding denying Mr. Rowley's constitutional challenge to the VPA should not be read as a declaration that the VPA constitutes sound public policy. Our court decides questions of law, not policy. Especially as an intermediate appellate court that generally lacks amicus input, we are not in a position to assess the various interests implicated by imposition of mandatory financial obligations such as the VPA. In recent years, the Washington Legislature has been responsive to ameliorating hardships posed by imposition of LFOs on indigent defendants. *See* LAWS OF 2022, ch. 260, § 3; LAWS OF 2018, ch. 269. Further LFO reform to include an assessment of the VPA may be pursued through the legislature, but this court is not in a position to provide a remedy.

No. 38281-8-III
*State v. Rowley*

CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

I CONCUR:

_____
Siddoway, C.J.

No. 38281-8-III

Fearing, J. (dissenting) —

> *A Free-man shall not be amerced for a small fault, but after the manner of the fault; and for a great fault after the greatness thereof, saving to him his contenement.* Magna Carta, 9 Hen. III, ch. 14 (1225).

The issue on appeal illustrates the American justice system's unrelenting determination to punish no matter the cost and our penal regime's halfhearted effort to facilitate financial rehabilitation of offenders. Elijah Rowley challenges the $500 victim penalty assessment, imposed on him under RCW 7.68.035. Rowley contends that, because of his indigency, the assessment contravenes the excessive fines clause of article I, section 14 of the Washington Constitution. Rowley asks this court to remand with instructions to strike or reduce the victim penalty assessment.

I agree with Elijah Rowley and would strike the victim penalty assessment in his judgment and sentence. I dissent from the majority opinion.

FACTS

Because a court evaluates the excessiveness of a fine in part based on the severity of the crime, I review the facts of Elijah Rowley's crime. At age 19, Rowley pled guilty to third degree rape. His plea to rape demanded that he register as a sex offender. On November 25, 2020, Rowley, on his release from jail, went to live with his girlfriend. He registered the girlfriend's address as his abode with the county sheriff's office.

On January 25, 2021, a court entered a no-contact order that prevented Elijah Rowley from further contact with his girlfriend. Rowley went to temporarily reside in a hotel. He informed his community custody officer of the hotel's address, but failed to inform the sheriff's office. According to Rowley, he did not know he needed to inform both the community custody officer and the sheriff of a change in address. For the next two months, Rowley weekly reported to his community custody officer.

On February 22, 2021, a police officer spotted Rowley ambling through a parking lot, and the officer told Rowley he needed to register any new address with the sheriff's office. On February 23, Rowley notified the sheriff's office of his new address. When he later procured permanent housing, Rowley notified both the sheriff's office and his community custody officer of his new residential address.

## PROCEDURE

The State charged Elijah Rowley with failing to register as a sex offender between January 25 and February 22, 2021. Because of Rowley's indigency, the superior court appointed counsel at public expense. After a bench trial, the court found Rowley guilty of the charge.

During sentencing, Elijah Rowley commented that he was currently unemployed but looking for work. Four employers had employed him over the last three years. He voluntarily left his last employment one to two weeks earlier. He presently lived with an elderly woman for whom he provided care. The sentencing court never inquired about income or expenses related to this housing.

2

The superior court sentenced Elijah Rowley to ten days in jail. Because of Rowley's indigency, the superior court waived all discretionary legal financial obligations. The court imposed the mandatory $500 victim penalty assessment payable at $35 per month. Rowley did not then contend the assessment violated any constitutional clause.

When filing this appeal, Elijah Rowley filed a financial declaration in support of appointment of counsel on appeal. In the declaration, Rowley averred that he earned $500 during the last year, lacked any assets, and owed $700. He supported two children. The superior court entered an order allowing Rowley to appeal at public expense.

LAW AND ANALYSIS

RCW 7.68.035

Elijah Rowley challenges the constitutionality of RCW 7.68.035, which declares in part:

> (1)(a) When any person is found guilty in any superior court of having committed a crime, . . . there shall be imposed by the court upon such convicted person a *penalty assessment*. The assessment shall be in addition to *any other penalty or fine* imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor. . . .
>     . . . .
> (4) Such *penalty assessments* shall be paid by the clerk of the superior court to the county treasurer. Each county shall deposit one hundred percent of the money it receives per case or cause of action under subsection (1) of this section . . . into a fund maintained exclusively for the support of comprehensive programs to encourage and facilitate testimony by the victims of crimes and witnesses to crimes.

(Emphasis added.)  Under the language of RCW 7.68.035, superior courts must impose the victim penalty assessment regardless of a defendant's indigency.  *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

I appraise RCW 7.68.035 in the milieu of Elijah Rowley's financial circumstances and in the context of the Washington Constitution's excessive fines clause, article I, section 14.  Section 14 reads in its entirety:

> Excessive bail shall not be required, *excessive fines imposed*, nor cruel punishment inflicted.

(Emphasis added.)  Rowley does not seek to void RCW 7.68.035.  He only asks that this court not apply the statute to him.  Presumably any ruling favoring Rowley would benefit most other indigent offenders.

Elijah Rowley contends the excessive fine clause demands that the court consider his inability to pay above all other factors when determining whether the fine is proportionate or excessive.  Rowley does not contend that Washington's excessive fines clause affords greater protection to the offender than the United States Constitution's Eighth Amendment.

The State responds that the victim penalty assessment imposed by RCW 7.68.035 lacks a punitive goal and thus is not subject to the excessive fines clause.  Otherwise, the State ignores the question of whether the victim penalty assessment is excessive under article I, section 14.  The State forwards no law or analysis to endorse the proportionality

4

of the assessment, in Elijah Rowley's circumstances, assuming the court holds the assessment to be covered by the constitutional clause.

The State did not initially argue that the court should avoid review of the constitutional challenge to the victim penalty assessment because the State had not yet attempted collection of the judgment. This court asked for briefing on this question. The State now also asserts that Elijah Rowley's constitutional challenge to the victim penalty assessment lacks maturity because the State has not sought to collect the assessment. The State reasons that the court cannot determine whether the assessment, as applied to Rowley, is excessive until the court might enforce the assessment.

The arguments of the parties raise at least three questions. First, is the lack of any attempt to collect the victim penalty assessment a basis to ignore the alleged excessiveness of the assessment? Second, is the victim penalty assessment imposed under RCW 7.68.035 a "fine" within the meaning of the excessive fines clause? Third, assuming the assessment is a fine, is the fine excessive under Elijah Rowley's economic circumstances?

RIPENESS

I first resolve whether this court should decline to assess the constitutionality of the victim penalty assessment because of the purported lack of any attempt to collect the judgment. I deem this question to implicate the doctrine of ripeness. The State maintains that additional events must occur before the court should review Elijah Rowley's challenge. This court's majority adopts the State's viewpoint.

5

The State relies on *State v. Curry*, 118 Wn.2d 911, 829 P.2d 166 (1992). Three offenders challenged the imposition of court costs, recoupment of appointed counsel's fees, and a victim assessment fee as unconstitutional because of their inability to pay. The Supreme Court adopted the Court of Appeals' ruling that constitutional principles are implicated only if the government seeks to enforce collection of the assessments. The Court did not explain why. The Supreme Court did not identify the constitutional clause or clauses, under which the offenders challenged the victim penalty assessment. The Court never analyzed whether it could determine the excessive nature of the assessment for purposes of the excessive fines clause before any collection attempt.

The State contends that *State v. Curry* controls this case. Indeed, in *State v. Tatum*, 23 Wn. App.2d 123, 514 P.3d 763, *review denied*, 520 P.3d 977 (2022), Division One of this court deemed *Curry* dispositive of a challenge to the victim penalty assessment under the excessive fines clause. Division One noted that the Court of Appeals must follow Supreme Court decisions. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

To repeat, *State v. Curry* did not directly address the excessive fines clause, although I question whether this distinction by itself merits ignoring Supreme Court precedent. Instead, I decline to follow *Curry* because, in addition to the lack of an explicit holding, the ruling conflicts with recent Washington Supreme Court rulings. *Curry* also thwarts the Washington Supreme Court's current practice and policy of freeing indigent offenders from the shackles of legal financial obligations. Finally, the

6

*Curry* decision conflicts with the stark and pronounced language of the excessive fines clause.

The language of the excessive fines clause proscribes the *imposition* of excessive fines, not the *collection* of the excessive fines. To repeat, article I, section 14 declares: "Excessive bail shall not be required, [nor] excessive fines *imposed*." (Emphasis added.) The relevant portion of the Eighth Amendment reads identically: "Excessive bail shall not be required, nor excessive fines *imposed*." (Emphasis added.) Courts apply a constitutional clause according to its plain meaning. *Bronson v. Syverson*, 88 Wash. 264, 276, 152 P. 1039 (1915). The language of the excessive fines clause demands that the court address the validity of the fine at the time of imposition, not collection. The excessiveness of the fine must be weighed at the time of sentencing.

The ruling in *State v. Curry* echoes a position taken by Washington courts before *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). Many panels of the Washington Court of Appeals refused to entertain challenges to discretionary legal financial obligations because the record omitted any mention of whether the State attempted to collect the obligations. The Supreme Court, in *State v. Blazina*, did not directly address the ripeness of a challenge to discretionary legal financial obligations before collection, but ruled that a reviewing court may address, on discretionary review, a challenge despite the offender having failed to contest the imposition of the obligations before the superior court. The cases on review, in *Blazina*, lacked any record of attempts to collect the financial obligations. When reviewing the challenge, the Supreme Court highlighted the

obligations increasing an offender's difficulty in reentering society, the doubtful

recoupment of money by the government, and inequities in the administration of financial

obligations. Thereafter, Court of Appeals panels routinely reviewed disputes regarding

discretionary legal financial obligations despite no attempt by the State to collect the

obligations.

*State v. Blazina* entailed a *statutory* challenge to the imposition of discretionary

legal financial obligations, whereas *State v. Curry* involved a *constitutional* challenge to a

legal financial obligation. Still, more reason exists to entertain a constitutional challenge

than a statutory challenge to financial obligations regardless of collection efforts because

of the primacy and importance of constitutional law. RAP 2.5(a)(3), which allows review

of manifest constitutional error despite the failure to preserve the error before the superior

court, recognizes the need and desirability of entertaining constitutional claims.

Constitutional errors are treated specially because they often result in serious injustice

and may adversely affect public perceptions of the fairness and integrity of judicial

proceedings. *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988).

The State's solicitation of the ripeness barrier fails to recognize the practical and

serious impact of the victim penalty assessment remaining as part of the judgment and

sentence against Elijah Rowley regardless of any collection endeavors. Inconveniences,

burdens, punishments, and denial of rights abound from a judgment for the victim penalty

assessment. The requirement that the offender pay a monthly sum toward a legal

financial obligation constitutes a condition or requirement of a sentence, and the offender

8

faces penalties for noncompliance. RCW 9.94A.760(11). An offender delinquent in payment of legal financial obligations faces contempt charges and imprisonment. RCW 9.94B.040 and RCW 10.01.180. The judgment for obligations may also be enforced as a civil judgment. RCW 9.94A.760(5).

Many other consequences proliferate from the judgment for legal financial obligations regardless of whether the State actively seeks to collect payment. The State may add collection fees to the sum of the financial obligations. RCW 9.94A.760(13). Most importantly, the trial court retains jurisdiction over the offender until the defendant completely satisfies the financial obligations. RCW 9.94A.760(5). The sentencing court continuously monitors the offender and often requires court attendance at hearings to disclose his or her financial condition with the attendant disruption in the offender's schedule. RCW 9.94A.760(6) and (8) require the defendant to provide information and documentation to the court clerk.

One who lacks the ability to pay financial obligations may not garner a restoration of civil rights. A certificate of discharge restores an offender's civil rights. RCW 9.94A.637(5). The court will issue a certificate of discharge only when an offender has completed all of his sentence requirements, including retirement of legal financial obligations. RCW 9.94A.637(1); *State v. Gossage*, 165 Wn.2d 1, 6, 195 P.3d 525 (2008). The lack of a discharge impacts the offender's right to bear arms. RCW 9.41.040.

9

I recognize the difficulty that Elijah Rowley may encounter gaining housing or employment solely because of his need to register as a sex offender. Nevertheless, the Washington Supreme Court, in *State v. Blazina*, 182 Wn.2d 827 (2015), observed ills associated with legal financial obligations imposed against indigent defendants regardless of the nature of a conviction. The trial court's lengthy involvement in collecting obligations inhibits reentry of the offender to society regardless of whether the State actively seeks to collect the judgment. Legal or background checks will show an active criminal record in superior court for individuals who have not fully paid their financial obligations. The active record impairs the defendant's access to employment, housing, and credit. Reentry obstacles increase the chances of recidivism. Rowley's need to register as a sex offender only increases these obstacles.

In addition to contradicting the lucid language of the excessive fines clause, circumventing recent Supreme Court rulings, and riding against the stream favoring facilitating an indigent offender's return to society, the State's ripeness argument thwarts judicial and common sense when pondering its ramifications. Under the reasoning of the State, the legislature could enact a law requiring the superior court to impose a fine of $10 million on conviction for the shoplifting of a smart phone, the crime of third-degree theft. The offender could not obtain appellate review of the excessiveness of the fine on entry of the judgment and sentence unless and until the State attempted to collect the fine. Other unreasonable consequences from the State's contention abound. An offender could not challenge his or her community custody conditions unless and until released from

10

incarceration because the State has not yet enforced that portion of the sentence. A civil litigant against whom a judgment is entered could not appeal the judgment unless and until the judgment creditor seeks to collect the judgment.

Finally, *State v. Curry* violates the tenets of a United States Supreme Court decision, from which most constitutional principles concerning collection of criminal costs and fees emanate. In *Fuller v. Oregon*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974), the Court upheld an Oregon statute imposing the cost of an attorney and an investigator on an indigent defendant. The Court implicitly held that the statute survived constitutional scrutiny only because of several features.

The Washington Supreme Court applied *Fuller* rules in *State v. Barklind*, 87 Wn.2d 814, 557 P.2d 314 (1976). The state high court delineated the salient features of a constitutionally permissible cost and fee structure as announced in *Fuller*. The following requirements must be met:

1. Repayment must not be mandatory;

2. Repayment may be imposed only on convicted defendants;

3. Repayment may only be ordered if the defendant is or will be able to pay;

4. The financial resources of the defendant must be taken into account;

5. A repayment obligation may not be imposed if it appears there is no likelihood the defendant's indigency will end;

6. The convicted person must be permitted to petition the court for remission of the payment of costs or any unpaid portion; and

11

7. The convicted person cannot be held in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court order or a failure to make a good faith effort to make repayment. *State v. Barklind*, 87 Wn.2d 814, 818 (1976).

The Washington Supreme Court, in *State v. Curry*, erroneously concluded that the victim penalty assessment conforms to all of *Fuller*'s demands. To the contrary, the victim penalty assessment violates requirements 1, 4, and 5 when applied to a penurious offender.

FINE

For the excessive fines protection to apply, a sanction must qualify as a "fine," and it must be "excessive." *City of Seattle v. Long*, 198 Wn.2d 136, 162, 493 P.3d 94 (2021). Having determined that Elijah Rowley's challenge to RCW 7.68.035 is ripe for plucking, I progress to the question of whether the victim penalty assessment, created by RCW 7.68.035, constitutes a "fine" for purposes of article I, section 14. In answering this question, I rely on both Washington and federal decisions. In 2019, the United States Supreme Court held that the excessive fines clause applied to the states through the Fourteenth Amendment. *Timbs v. Indiana*, ___ U.S. ___, 139 S. Ct. 682, 687, 203 L. Ed. 2d 11 (2019). Also, in *City of Seattle v. Long*, the Washington Supreme Court treated the state and federal provisions coextensive for the purposes of excessive fines. 198 Wn.2d at 159.

The excessive fines clause limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense. *Austin v. United States*, 509 U.S. 602, 609-10, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993); *Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989). Thus, to find a fine, a court must evaluate whether a payment constitutes punishment. The law distinguishes remedial action from punishment. *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 93 S. Ct. 489, 34 L. Ed. 2d 438 (1972). "Remedial action" seeks compensation or indemnity. *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232 (1972).

The State concedes that, if the legislature designed Washington's victim penalty assessment in part as an instrument of punishment, the assessment qualifies as a fine. Even if an assessment serves a purpose other than punishment such as a remedial goal, as long as the purpose of the assessment is in part punishment, the excessive fines clause applies. *Austin v. United States*, 509 U.S. 602, 609-10 (1993); *United States v. Halper*, 490 U.S. 435, 448, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989), *abrogated on other grounds by Hudson v. United States,* 522 U.S. 93, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997). The relevant question is whether a sanction is "simply" or "purely" remedial or whether it has any punitive characteristics, in which case it "'must be considered a punishment for the purpose of the excessive fines clause.'" *City of Seattle v. Long*, 198 Wn.2d 136, 161 (2021), *quoting State v. McClendon*, 131 Wn.2d 853, 883, 935 P.3d

1334 (1997) (plurality opinion). The State denies any punitive objective, however, for RCW 7.68.035's victim penalty assessment.

In addition to payments intended to chasten one for committing a crime, a fine includes a sanction intended to deter since deterrence forms one goal of punishment. *United States v. Bajakajian*, 524 U.S. 321, 329, 118 S. Ct. 2028, 141 L. Ed. 2d 314 (1998). Also, the excessive fine clause is not limited to criminal cases. *Austin v. United States*, 509 U.S. 602 (1993). A civil sanction that partially serves either retributive or deterrent purposes is punishment. *United States v. Halper*, 490 U.S. 435, 448 (1989). Washington and federal courts have routinely held that civil forfeiture of assets can be punishment for purposes of the excessive fines clause. *United States v. Bajakajian*, 524 U.S. 321 (1998); *Austin v. United States*, 509 U.S. 602 (1993); *City of Seattle v. Long*, 198 Wn.2d 136 (2021); *Jacobo Hernandez v. City of Kent*, 19 Wn. App. 2d 709, 497 P.3d 871 (2021). Washington's victim penalty assessment is more in the nature of punishment than is a civil forfeiture.

I begin with assessing legislative intent. If the legislature intended punishment, the inquiry ends there. *In re Personal Restraint of Metcalf*, 92 Wn. App. 165, 178, 963 P.2d 911 (1998). The label employed by the legislature for the extraction counts in determining an intent to punish and finding a fine. *United States v. Ward*, 448 U.S. 242, 248-49, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980); *State v. Catlett*, 133 Wn.2d 355, 365, 945 P.2d 700 (1997).

To repeat, RCW 7.68.035(1)(a) declares:

14

(1)(a) When any person is found guilty in any superior court of having committed a crime, . . . there shall be imposed by the court upon such convicted person a *penalty assessment*. The assessment shall be in addition to *any other penalty or fine* imposed by law and shall be five hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor.

(Emphasis added.). A holistic reading of RCW 7.68.035 demonstrates that one of the purposes behind RCW 7.68.035 is to recompense the State for the cost of administering programs for witnesses and victims. Nevertheless, the language and effects of the statute also display an intent to deter and punish. RCW 7.68.035 labels the financial obligation as a "penalty assessment." The first definition of "penalty" is:

the suffering in person, rights, or property which is annexed by law or judicial decision to the commission of a crime or public offense: punishment for crime or offense **:** penal retribution where a life sentence is the extreme *penalty* . . . **:** a fine or mulct imposed as such a punishment

WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1668 (2002). RCW 7.68.035(1)(a) continues with language that the victim penalty assessment is "in addition to *any other penalty or fine* imposed by law." (Emphasis added.) This language specifically groups the assessment into the categories of punishment and fine.

In *United States v. Bajakajian*, 524 U.S. 321 (1998), the United States Supreme Court ruled that the forfeiture of cash constituted a fine because the forfeiture occurred as the culmination of a criminal proceeding and required conviction of an underlying felony. Washington courts impose the victim penalty assessment only on one convicted of a crime and at the time of sentencing. The assessment is included in the formal criminal judgment and sentence. The State of Washington identifies no relationship between the

15

$500 amount and the actual cost to assist victims or witnesses in a particular case or the average cost per case of any witness or victim assistance program. All of these factors cry for the victim penalty assessment being classified as punishment.

A controlling decision is *City of Seattle v. Long*, 198 Wn.2d 136 (2021). Steven Long parked his truck on property owned by the city of Seattle for more than 72 hours, thereby violating the Seattle Municipal Code (SMC). For this civil infraction, a city-contracted towing company impounded Long's truck. Long resided in his truck. He labored as a general tradesman and stored work tools and personal items in the vehicle. Long argued that the impoundment violated Washington's homestead act and the federal excessive fines clause.

Before the Washington Supreme Court, the city of Seattle argued that the forfeiture, together with a payment plan to redeem the car, was remedial rather than punitive because the city sought to recoup the towing and storage fees paid on Long's behalf. The Supreme Court disagreed. SMC 11.72.440(E), a portion of the city code, characterized the impoundment and payment plan as a "penalty" for violating the 72-hour law, making them partially punitive. The code section read, "Vehicles in violation of this section are subject to impound as provided for in chapter 11.30 SMC, in addition to *any other penalty* provided for by law." (Emphasis added.) A sanction partially punitive qualified as a fine. RCW 7.68.035 reads similarly.

*Jacobo Hernandez v. City of Kent*, 19 Wn. App. 2d 709, 497 P.3d 871 (2021) also supports Elijah Rowley's position. Adrian Jacobo Hernandez challenged the forfeiture of

16

his vehicle by the City of Kent.  The city seized the car, under RCW 69.50.505, because Jacobo Hernandez transported controlled substances therein.  Jacobo Hernandez testified the car, worth between $3,000 and $4,000, was his only asset.  This court ruled that, because Jacobo Hernandez was indigent, the forfeiture of his only asset was grossly disproportionate and therefore unconstitutional.  The court held the forfeiture to constitute a fine despite the legislature entering findings that the goal of civil asset forfeiture was to compensate law enforcement for the costs of investigating drug crimes and deter drug offenses by reducing profits from drug trafficking.

The State claims that the Supreme Court held the victim penalty assessment to be nonpunitive in nature in *State v. Humphrey*, 139 Wn.2d 53, 983 P.2d 1118 (1999).  The Supreme Court also reviewed the victim penalty assessment in *Humphrey*.  An amendment to RCW 7.68.035 raised the assessment from $100 to $500.  The defendants committed their crimes before the effective date of the amendment, but the defendants were convicted of the crimes after the date.  The court needed to resolve whether the amendment applied prospectively.  The court did not resolve the case under any constitutional principles, but rather by rules of statutory construction.

The Supreme Court, in *State v. Humphrey*, issued a confusing decision.  In one passage, the court suggests that the victim penalty assessment is an "obligation" or "liability," not a penalty.  139 Wn.2d at 62.  This passage erroneously suggests that an obligation or liability cannot be penal in nature.  Later, however, the court suggests a new liability may not be remedial in nature.  *State v. Humphrey*, 139 Wn.2d at 63.  In a second

17

passage, the court writes that "[t]he legislature expressly stated that its purpose in enacting RCW 7.68.035 was remedial and that the increased assessment furthers that purpose." *State v. Humphrey*,139 Wn.2d at 62. The court then cited Laws of 1996, ch. 122, § 1, which proclaims a legislative intent to "provide increased financial support for the county and State crime victim and witness programs." Laws of 1996, ch. 122, § 1, also declared a "remedial intent" behind the crime victims compensation program. In the end, however, the *Humphrey* court declined to apply the amendment retroactively because the increase in the amount of the victim penalty assessment illustrated that the assessment was penal, not remedial, in nature. Thus, *State v. Humphrey* sustains Elijah Rowley, not the State. At the least, assuming RCW 7.68.035 carries a remedial purpose, its purpose also extends to punishment.

The State also relies on *State v. Seward*, 196 Wn. App. 579, 384 P.3d 620 (2016). But *Seward* involved a challenge under the due process clause, not the excessive fines clause.

EXCESSIVENESS

Since the victim penalty assessment constitutes a fine, I must determine if the assessment is excessive in the context of an indigent offender. The concept of proportionality serves as the touchstone behind the constitutional inquiry under the excessive fines clause. *United States v. Bajakajian*, 524 U.S. 321, 333-34 (1998). The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. *Alexander v. United States*, 509 U.S. 544, 559, 113 S. Ct. 2766, 125

18

L. Ed. 2d 441 (1993). Courts apply no mathematical formula to assess excessiveness. Any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise. *United States v. Bajakajian*, 524 U.S. 321, 336 (1998). A punitive forfeiture is constitutionally excessive when it is "grossly disproportional" to the gravity of a defendant's offense. *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

Courts recognize that fines enacted by the legislature may be employed in a measure out of accord with the penal goals of retribution and deterrence, since fines bring the government revenue, while other forms of punishment cost a state money. *Harmelin v. Michigan*, 501 U.S. 957, 978 n.9, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (opinion of Scalia, J.). Courts should scrutinize governmental action more closely when the State stands to benefit. *Harmelin v. Michigan*, 501 U.S. 957, 978 n.9 (1991) (opinion of Scalia, J.). Fines on offenders are politically wiser to impose than generally applicable taxes, such that state and local governments nationwide increasingly depend heavily on fines and fees as a source of general revenue. *Timbs v. Indiana*, __ U.S. __, 139 S. Ct. 682, 689, 203 L. Ed. 2d 11 (2019). Offenders, particularly sex offenders, lack a strong lobby in Olympia.

When weighing gross disproportionality, courts consider factors including (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. *United States v. Bajakajian*, 524 U.S. 321, 337-40 (1998); *State v. Grocery Manufacturers Association*, 195 Wn.2d 442, 476, 461 P.3d 334 (2020). Some

19

courts also consider (5) the duration and extent of the criminal enterprise, including the street value of any illegal substances, (6) the effect of the crime on the community, and (7) costs of prosecution. *Jacobo Hernandez v. City of Kent*, 19 Wn. App. 2d 709, 718-26 (2021).

One might deem the financial condition of the defendant irrelevant to the proportionality of the fine. One might argue that offenders should pay the same amount of fine for the same crime regardless of one's bank account. Often lists of factors omit the financial status of the offender. Nevertheless, the Washington Supreme Court requires the lower courts to consider a person's ability to pay. *City of Seattle v. Long*, 198 Wn.2d 136, 173 (2021). The excessive fines clause derives from the Magna Carta, and the Great Charter forbade penalties so large as to deprive a person of his livelihood. *City of Seattle v. Long*, 198 Wn.2d 136, 169 (2021). A fine should not extract from one the full extent of his means. *City of Seattle v. Long*, 198 Wn.2d 136, 168 (2021). The Washington Supreme Court, in line with many modern state and federal courts and a choir of legal scholars, insists that the history of the clause requires that the offender possess the ability to pay any fine. *City of Seattle v. Long*, 198 Wn.2d 136, 170 (2021).

I previously detailed the facts behind *City of Seattle v. Long*, 198 Wn.2d 136 (2021), wherein the Washington Supreme Court declared that the repossession costs imposed by the city of Seattle to constitute a fine. The Supreme Court next analyzed whether the assessment of the costs was excessive because of Steven Long's poverty. The court employed the gross disproportionality test that considers (1) the nature and

extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, (4) the extent of the harm caused, and (5) a person's ability to pay the fine. The offense at issue was a civil parking infraction that carried a $44 fine. The offense of overstaying one's welcome in a specific location was not particularly egregious. The State introduced no evidence that the infraction related to any other criminal activity. The city suffered the harm of paying the costs of towing and impoundment.

The Washington Supreme Court emphasized Steven Long's circumstances. On impoundment of the vehicle, Long earned between $300 and $600 and accrued $100 in tribal fees per month. He told the magistrate at his impoundment hearing that he lived in his truck and possessed only $50. Long wished to move himself from homelessness by saving for an apartment. During that time, Long's truck held his clothes, food, bedding, and various work tools essential to his job as a general tradesman. After the truck was towed, Long slept outside before seeking shelter from the cold weather, and he contracted influenza. According to the Supreme Court, the facts indicated Long could not afford to pay the $547.12 assessment. Paying $50 per month when Long made at most $700, would leave him $650 on which to live. Long could not save money for an apartment and lift himself from homelessness while paying the fine and affording the expenses of daily life.

In *Jacobo Hernandez v. City of Kent*, 19 Wn. App. 2d 709 (2021), previously discussed, Adrian Jacobo Hernandez challenged the forfeiture of his vehicle by the city of

Kent.  The city seized the car, under RCW 69.50.505, because Jacobo Hernandez transported controlled substances therein.  Jacobo Hernandez testified the car, worth between $3,000 and $4,000, was his only asset.  Jacobo Hernandez was indigent.  This court ruled that the forfeiture of his only asset was grossly disproportionate and therefore unconstitutional.

In *State v. Jacobo Hernandez*, the car played a central role in the crime.  Jacobo Hernandez, who owned the vehicle, pled guilty to possession with intent to distribute methamphetamine.  The "guilty property" could not be separated from the innocent property, because the vehicle was used to store, transport, and deliver methamphetamine.  Jacobo Hernandez hid the methamphetamine in the vehicle's gas tank.  The factors relating to the instrumentalities of the crime weighed exclusively toward upholding the forfeiture.

Under proportionality factors, Adrian Jacobo Hernandez committed a drug delivery involving a significant amount of methamphetamine.  The crime related to other illegal activities, and Jacobo Hernandez admitted to two other deliveries.  The other penalties that could be imposed for the crime were a mandatory minimum term of ten years in prison, a fine of up to ten million dollars, a mandatory minimum of five years on supervised release, and a mandatory special assessment of $100.  The legislature enacted the civil forfeiture statute as a deterrent to drug trafficking due to the devastation drugs wreak on our society.  Thus, four out of the five proportionality factors favored forfeiture.

22

Despite all but one factor favoring upholding the forfeiture, this court, in *Jacobo Hernandez v. City of Kent*, declared the forfeiture of the car unconstitutional in Adrian Jacobo Hernandez' circumstances because of his insolvency and the vehicle being his only asset. The court deemed that the Supreme Court, in *State v. Long*, allowed a court to base its decision on only the factor of financial circumstances. The court deemed Jacobo Hernandez destitute based on the court appointing counsel for him in addition to his testimony.

I now analyze the factors as they play in Elijah Rowley's life and conviction. His failure to register was not egregious under his circumstances. The failure was not intentional. He gave the new address to the community custody officer. The sheriff lacked the address for only a month. An offender could reasonably believe that notice to one government entity sufficed for notice to the other entity. Rowley did not use the sheriff's lack of an address to his advantage. Nevertheless, RCW 7.68.035 demands that Rowley pay the same victim penalty assessment as one convicted for first degree murder.

Elijah Rowley's crime was unrelated to other current illegal activities. He was sentenced to ten days in jail without any additional community custody. He caused no harm. Finally, Rowley is unemployed, has no assets, is in debt, and has two children to support.

In *State v. Jacobo Hernandez* all factors, except Jacobo Hernandez' impoverishment weighed in favor of enforcing the fine in the face of the excessive fine clause. Still, the court ruled the forfeiture of the vehicle unconstitutional. In Elijah

23

Rowley's prosecution, many other factors other than Rowley's indigency weigh in favor of declaring the assessment in violation of the excessive fines clause.

When asserting the defense of lack of ripeness, the State argues that an individual's financial circumstances can and do change. This contention, however, ignores reality and the unlikelihood that Elijah Rowley's circumstances will change. The State presented no evidence at the sentencing hearing that Rowley's situation will improve. The argument also disregards the judgment's hindering of pecuniary progress.

The State's contention that Elijah Rowley might gain the resources to pay at some indefinite time in the future fails to account for the burden on the financial purse of the government caused by the court clerk's monitoring of the judgment, periodic court hearings to determine the financial circumstances of Rowley, the potential need for the participation of attorneys for the State and the offender during the collection process, and other costs of collection or modification of the judgment amount. As a substitute superior court judge, I have presided over a baker's dozen of legal financial obligation dockets exceeding a half hour that resulted in no recovery and unearthed no potential for the collection of obligations in the near future from perennially impoverished offenders. Devoting hours of time to collect $500 despoils reason and illustrates the gratuitous quality of the harassment meted on destitute offenders.

Finally, the financial circumstances of Adrian Jacobo Hernandez and Steven Long could have changed with the passing of time. This possibility did not influence the Washington courts when declaring their respective penalties excessive.

24

By showing mercy to the destitute offender, I wish not to ignore victims of crime. Elijah Rowley victimized a young woman with his crime of rape, but he caused no direct harm to anyone by his failure to register his address with the sheriff's office. Even on adoption of my dissent, the superior court would retain the ability to impose restitution to victims even on impoverished offenders.

Because the superior court never had an opportunity to address the excessiveness of the $500 victim penalty assessment in Elijah Rowley's circumstances, I might have favored remanding for a determination by the superior court of the chances of Rowley being able to pay some of the assessment in the reasonable future and to weigh those chances with the obstacles the judgment erects to any possible success. Nevertheless, the State does not challenge the excessiveness of the fine, only that the assessment does not constitute a fine. Nor does the State ask for any remand for findings by the superior court.

_____
Fearing, J.

25